Good morning. I'm Lisa Bordiaga from San Benito, Texas, on behalf of Ms. Pham. If it please the Court, I would like to try to address two things today. First of all, the issues that the Board of Immigration Appeals did not address on remand. There are three of them. First, the objective basis for her fear of being placed in a re-education camp if she were to return to Vietnam. Second, the interaction and magnifying effect of the three social groups in which she claims membership. And third, the importance of the sealed envelope. And I would also then hope to have time to address the issue of social group and exhaustion that the government has raised. Counsel, let me ask you a preliminary question. She has apparently filed for adjustment of status. That's correct, Your Honor. The Citizenship Immigration Services concluded that because she had been a prostitute, whether voluntary or involuntary, she required a waiver, and she filed for that waiver, and they denied it, finding that she had not shown extreme hardship to her U.S. citizen husband, notwithstanding their child. And that decision is now on appeal. So that's in a separate proceeding. That's a separate proceeding. Because she's in exclusion proceedings, the immigration court did not have jurisdiction over her application for adjustment of status, so that proceeded separately. And we had a long struggle getting them to even adjudicate it, and now we're on the appellate level of the waiver. Thank you. Yes, Your Honor. Arne, did you check the clock? Go on, Sarah. Now, in terms of the things that the Board of Immigration Appeals did not address, I think it's very clear that they did not get to the question of whether she had an objective fear, whether there was an objective basis for her fear of being placed in a reeducation camp if she were removed. They found instead, based on their reading of this appeal, that her definition of the social group of former prostitutes failed because she did not show and she has not claimed that there is sort of class-wide persecution of that group. What she tried to do was to bring herself more nearly under BIA precedent in terms of showing that she belonged to groups with immutable characteristics, one of which is the issue of having once been a prostitute, albeit forced, and that she feared persecution on that basis. She also tried to show that she was a member of two other groups on the basis of immutable characteristics, one being that of having been an expatriate and the other having been family association with a former officer of the South Vietnamese Army who himself spent four years in a reeducation camp. And she could not show, and I don't believe she has to show, that the government Vietnamese officials stated that they were persecuting her on those basis. The only one they ever mentioned was they threatened to put her in a reeducation camp if she returned or didn't leave in a timely fashion because she had once been a prostitute. But that's not how persecutors work. You're not going to sit there and say, shall I persecute her because she used to be a prostitute? Nah, maybe not. Well, shall I do it because she's an expatriate? Nah, maybe not. Shall I do it because she's the daughter of this so-and-so? Nah, maybe not. They're more likely to say in the real world, why, this woman is a prostitute, she's an expatriate, she's, you know, she's the daughter of so-and-so and so-and-so. This woman is not somebody we want here. This woman has to go to the reeducation camp. And that was what we were trying to portray to the board. And in their response, all they said was, well, prostitutes aren't a social group because it's not class-wide persecution. And expatriates, well, you know, nah, they're disfavored, but, you know, not totally persecuted. And they ignored the third group of the family relationship. Do you have evidence in the record as to conditions in the reeducation camps? Yes, there is evidence that's in the State Department reports. And we cited in our brief, cited it in our brief to the, both to the board and here, saying that she would likely be subjected to rape, to near starvation, to forced labor. And all of those things are supported by the by the record. The government's response to that was, well, that's irrelevant because she hasn't been sent to a reeducation camp. But that is very much in the record. Now, as to the sealed envelope, the government says that it's irrelevant because the when she was brought to the border, when she came to the border, they paroled her in. That's not what we're saying. We're not saying it's relevant to her admissibility. What we're saying is that it's highly relevant to her asylum claim. The consul, with whom she had repeated discussions before he gave her a transportation letter, put in that transportation that she was a lawful permanent resident so that the airline could bring her to San Francisco. The consul knew full well that that was not true. And he gave her a sealed envelope to give to INS when she got there. And she did. And I think the only logical thing that could have been in that sealed envelope was something saying, look, I said she was a lawful permanent resident, she stays here, and I wanted to give her a way of getting out so she could come and do whatever she had to do. That is corroborated by the fact that they did do a deferred inspection when she got here. So there must have been something in that envelope to make them think that this wasn't just your normal case of a totally undocumented person showing up on an airline. And the government has repeatedly stated that that nothing was ever lost, but they have refused to produce it. We tried to get it at the trial, and the government wouldn't produce it. They tried through the Freedom of Information Act. They couldn't get it. And we have raised it repeatedly, and the government still doesn't say they don't have it. They don't say it's not relevant to her asylum claim. They just say it's not relevant to her admissibility. And we acknowledge that, but that's not why we're trying to get it. And then when it comes to the issue of the tension between the BIA precedent and this Court's precedent in terms of what is a social group, the BIA defines it in connection with international law as here where it's based on an immutable characteristic that that can define a social group. But then if you belong to that social group, unless you have shown past persecution, you must show a well-founded fear of future persecution. She does not assert that the harassment she received when she was in Vietnam under trickery rose to the level of persecution. And you don't appear to assert that membership in what you've defined as a social group itself is the source of the fear of future persecution, because you just told us it doesn't work like that, and it isn't the fact that she was once identified as a prostitute that causes her problems with the selection of ingredients. But that's kind of hard to put into a framework that requires a persecution to be on account of one of the enumerated grounds. Well, I don't believe that the persecution is required to be solely on account of one enumerated ground. Under international law, what is relevant is whether it is objectively reasonable that she believes it is on account of these enumerated grounds. And she subjectively believes that the primary reason that they were persecuting her or were threatening to persecute her was because of her membership in this social group. That it had come to their attention that this is an extremely disfavored group in the society. And it's so disfavored that when it came out in the community that she had been a prostitute, her son was harassed and was forced to disown her in order to be able to live in that society. So that, I think, is very good proof that it is a disfavored group. Doesn't the country report, though, indicate that there are efforts to try to help prostitutes because prostitution is rampant in the country? So there's some indication that the government is actually trying to help this group? No. The efforts to help the prostitutes are not efforts by the government. Those are efforts by various nongovernmental organizations. The government does have efforts to try to stop prostitution. But the efforts to rehabilitate former prostitutes, there's nothing in the record to indicate that the government is in any way involved in those. Those are nongovernmental organizations and private groups. To date, she hasn't suffered any harassment. And I guess we don't know whether this threat to put her into a reeducation camp is real or just threat, do we? Well, she was harassed when she was there. I think that having the gangs of people coming to her house on basically a daily basis to where she got afraid to go out of the house, the fact that she was required to report to the police station on a regular basis where she was interrogated and repeatedly told that if she didn't leave on time or if she came back, she would be put in a reeducation camp. I think that is a well-founded fear. We don't have to prove that it's more likely than not. All we have to prove, say, maybe a 10 percent chance. But the fact that her father spent four years in a reeducation camp and that they threatened specifically that that's what they were going to do to her, and the State Department materials all show that they carry through on their threats, that they do arrest people arbitrarily. And I think that that shows that her fear is well-founded. And I would like to reserve a minute or so, if I may. Thank you very much. May it please the Court. Good morning. My name is Melissa Nyman-Kelting on behalf of the Attorney General. This case comes down to whether Ms. Pham has demonstrated that the record compels a conclusion that she established a well-founded fear of future persecution in Vietnam. She has not, and she cannot. She's had two opportunities to present her claim to the agency. On remanded proceedings, the Board found that she failed to establish an objectively reasonable well-founded fear of future persecution in Vietnam. It did not reach the particularly social group issue, specifically of whether former prostitutes or repatriates constitute particular social groups in Vietnam, because it determined that she had not shown that these individuals face any risk in Vietnam. What is the government's position on persons who are actually put into these reeducation camps? Are they persecuted? Your Honor, that would be a question for the Attorney General in the first instance. That was not raised in this case, and that was not – there's no agency decision on that specific question in this case. Ms. Pham does claim that she would be placed in a reeducation camp upon her return to Vietnam. However, this claim is relied both by the record, as was pointed out, that the government – in fact, at page 268 of the record, it does indicate that the government is working specifically with the non-governmental groups to rehabilitate and assist those who were former prostitutes or prostitutes in Vietnam. But the record shows nothing to compel the conclusion that Ms. Pham would be placed in a reeducation camp upon her return for any of her alleged reasons. So that wasn't really my question. My question was, does the government have a position on whether, if placed in such a facility, there's a likelihood of persecution? The government does not have a position on that today, Your Honor, because there was no agency decision on that explicit question below, so there is no position on that today before this Court. How was the issue raised before the agency? Your Honor, in Ms. Pham's asylum application, she claimed fear of persecution based solely on her status as a former prostitute and as a repatriate to Vietnam. Nowhere in her asylum application did she raise the claim of family as a social group, which has now been raised on appeal. That claim was not exhaustive. There's no agency decision on that claim. Well, did she claim that she would be persecuted in a reeducation camp? She claimed that she would be placed in the reeducation camp and that that constituted persecution. The agency didn't decide otherwise. So do I take that to mean for our purposes, if we conclude she's established a sufficient probability of risk of being placed in a reeducation camp, there is not a determination that says that the reeducation camp does not amount to persecution? That's correct, Your Honor. If this Court is compelled to find that Ms. Pham will face a well-founded fear of persecution upon her return to Vietnam and that she has shown that the record compels that, there is no finding by the agency that if she is placed in a reeducation camp, that it would be on account of any of the protected grounds, first of all, or that that placement in the reeducation camp constitutes persecution as envisioned by the asylum law. That determination has not been made yet by the agency in the first instance. It did not need to reach that question because here, based on the fact that Ms. Pham had returned to Vietnam, granted under false pretenses according to the record by her sister bringing her back to Vietnam, she was able to enter the country, granted one-month stay. She was able to get that stay extended for three months. She was questioned, the record shows, by different numbers of police officers asked to report to the police station. But she was never, during that time, placed in a reeducation camp while she was in Vietnam. And the country conditions do not indicate that her status as an individual who is a former prostitute or a repatriate to Vietnam, that she would, that there's, that she has shown that the record compels that she would be placed in a reeducation camp upon her return. Does the government know whether Vietnam would accept her? That, Your Honor, I don't have an answer for today. I know that the governments are working on getting the appropriate paperwork to remove someone from the United States. You have to have the appropriate travel documents from the receiving country. I'm not equipped today to answer the question of whether Vietnam is accepting individuals ordered, removed or excluded from this country at this time. But the issue today is whether the board's final order of exclusion in this case was appropriate. I understand that, but sometimes these cases are kind of for nothing because if she's correct, that they told her to get out of the country within a month and that she must get out, that they would turn around and say, yes, we'll accept her back. It seems a little doubtful. That's a fair question, Your Honor. And at that time that she was in Vietnam was 1995. It is now 2007. And the country reports do indicate that individuals who left Vietnam either legally or illegally are being accepted back into Vietnam, not necessarily required to have any sort of reentry paperwork. Ms. Pham was in Vietnam for three months without any sort of threat to her life that was substantiated. Her family, based on the record, she still has family there in Vietnam. There's nothing on this record to compel the conclusion that there's a well-founded fear of her future persecution for her should she return to Vietnam. And I just do, unless the panel has any other questions, I do want to address a couple of the concerns that Petitioner's Counsel brought up. Here, to be clear, there was no board finding about whether either of those groups constitute particular social groups in this instance. It was not required to make that finding. It did not make that finding. As to the contents of the sealed envelope, the government's position is not, is that they are immaterial to her asylum claim because if the court reviews the letter that's in the record at page 311, the consular officer indicates that he is claiming that Ms. Pham is a local permanent resident based on the information given to him at that time. He did give her additional documents to bring to the United States, and the letter explicitly states that the inspecting immigration officer was then to review her papers and determine whether she was eligible for admission into the United States. There's additional evidence in the record that shows that over a course of a year and a half, there was further investigation as to whether Ms. Pham had ever adjusted status to that of a local permanent resident, and they determined that while she did come in initially on a K-1 visa, which was a fiancé visa based on her marriage to her first husband, Stephen Killian, the adjustment of status based on that marriage was never effectuated, and the agency properly put her into exclusion proceedings based on that. There's nothing in the record evidence to indicate that anything contained in those sealed documents had to do with her fear of future persecution in Vietnam. Is the procedure of sending documents along in a sealed envelope a standard procedure of government regulations? Your Honor, I don't know the answer to that question. I ask because it's the first time I've encountered that in all the immigration cases I've had, so it does give the suggestion, if it's not standard procedure, maybe there is something working in the background, and it's not surprising that people would be curious as to exactly what's in there. It's true, Your Honor. Based on the evidence that we have in this record, it seems that Ms. Pham was coming back and forth into the country based on her sister's assertions, and that her sister was kind of the one taking control of all the documents. She didn't have a lot of control. Her sister retained possession, and that her sister was not working with her, to allow her to leave the country. So based on what seems that she had multiple visits to this consular office in Hanoi, and she had the divorce petition, and based on her own testimony that this is my status, I don't have anything else beside my passport, because my sister has it, I don't have it, and this is how she was able to go to the consular officer who made multiple phone calls in order to get her the paperwork to get out of the country. But again, that goes more to her admissibility, which was determined when she got here, that she was not. There's nothing in the record to indicate that it would go to any sort of well-founded future persecution. I see my time is expiring. Unless the panel has any further questions, the government submits that Ms. Pham has not met her heavy burden of showing that this record compels the conclusion that she has an objectionably reasonable fear of future persecution in Vietnam. Therefore, we ask that you deny the instant petition. Thank you. Very quickly, I would disagree with the government that the compels the conclusion is a correct test, because as I stated in my opening, the board never addressed the question as to whether her fear was objectively reasonable. They found that she had not established a fear of persecution based solely on the fact that prostitutes were not persecuted on a class-wide basis. They did not reach that question, and they did not reach the question of whether she was a member of any social groups. But she also, I would point out, she told the consul that she had not finished her adjustment of status, that there was a divorce petition pending. He knew she took the petition. He saw it. He had her A number. He could have very easily ascertained whether or not she was a lawful permanent resident with her A number speaking to immigration in the U.S. So I think that the thought or the suggestion that he might have thought that she was a permanent resident is not true. And I would hope that if the Court remands it, they retain jurisdiction so we can keep a stay of removal in effect. Thank you very much. Thank you.
judges: B. Fletcher, Clifton, Ikuta